## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

| | |
|---|---|
| **MOLLY WHITLEDGE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CAUSE NO: **4:08cv-4 M** |
| | ) |
| **TROVER HEALTH SYSTEM,** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### I. Nature of the Case

1. This is an action brought by Plaintiff, Molly Whitledge (hereinafter "Whitledge"), by counsel, against Defendant, Trover Health System (hereinafter "Defendant"), pursuant to the American with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101 et seq. and Kentucky Revised Statute ('KRS") 344.010 et. seq.

### II. PARTIES

2. Whitledge, at all times relevant to this litigation, resided in Hopkins County, Kentucky, which is within the geographical boundaries of the Western District of Kentucky.

3. Defendant is a domestic corporation doing business in Hopkins County within the Western District of Kentucky.

### III. JURISDICTION AND VENUE

4. Jurisdiction is conferred on this Court over the subject matter of this litigation pursuant to 28 U.S.C. § 1331; 28 U.S.C. § 1343; 28 U.S.C. § 1367 and 42 U.S.C. § 12117.

5. Whitledge's state law claim arises from the same common nucleus of operative

facts as her federal law claims and all of her claims form a single case and controversy under Article III of the United States Constitution.

6. Defendant is an "employer" as that term is defined by 42 U.S.C. § 12111(5)(A) and KRS344.030(2).

7. At all times relevant to this action, Whitledge was an "employee" as that term is defined by 42 U.S.C. § 12111(4) and KRS344.030(5).

8. Whitledge has a "disability" as that term is defined by 42 U.S.C. § 12102(2) and KRS 344.010(4).

9. Whitledge is a "qualified individual with a disability" as defined by 42 U.S.C. § 12111(8) and KRS 344.040(1).

10. Whitledge exhausted her administrative remedies by timely filing a charge of discrimination against Defendant with the Equal Employment Opportunity Commission, claiming discrimination based on disability and retaliation, and filing this complaint within ninety days of receipt of her Notice of Right to Sue.

11. The events, transactions, and occurrences concerning this case have arisen in the geographical environs of the Western District of Kentucky, thus venue is proper in this Court.

### IV. FACTUAL ALLEGATIONS

12. In October 2000, Whitledge suffered severe injuries as a result of a motor vehicle accident. As a result, Whitledge suffers from degenerative thoracic disk disease and spinal corrective osteotomy. While Whitledge underwent extensive surgery to correct damage to her vertebra, she continues to suffer from mild paralysis which significantly restricts the speed with which she can accomplish manual tasks. She is chronically debilitated which has significantly

restricted her ability to work as a result of the pain and fatigue caused by her condition.

13. Whitledge was hired by Defendant in or about February 2005 as an OB/GYN Nurse.

14. At the time Whitledge was hired, she was subjected to a physical and drug screening during which she completely disclosed her disabling physical impairment.

15. In or about April 2006, Whitledge transferred to a more appealing nurse position in Endoscopy. The job description for the Endoscopy position required an eight hour work day.

16. Shortly after starting in the position, in or about August 2006, Whitledge was reprimanded because her room turnover time was too slow based on a co-worker's complaint. After this meeting, Whitledge sought feedback from her co-workers to help ascertain deficiencies in her performance and methods by which she could improve.

17. In October 2006, Whitledge was disciplined a second time. Whitledge was told that "everyone else had to pick up her slack" because she was slower. That same day, she received a second disciplinary warning that simply read, "resentment." When Whitledge inquired as to the meaning and motivation behind the "resentment" warning, her supervisor told her that it was because Whiteldge had told other people what was said in their August meeting.

18. On November 21, 2006, Whitledge was given an ultimatum to improve her performance by January 1, 2007 or end her relationship with the department by Mary Ann Majors and Joy Allison. In response, Whitledge complained that she felt she was being singled out and harassed by her co-workers. Furthermore, Whitledge discussed her physical impairments and requested an accommodation for her disability.

19. On December 18, 2007, Defendant placed Whitledge on indefinite administrative

leave because it claimed that she was a "liability to the facility because of her pre-existing conditions."

20.     Whitledge was seen and evaluated by her physician to ascertain her ability to continue working.  On January 4, 2007, Whitledge's physician, the specialist who performed the extensive surgery to correct the damage to her vertebrae, recommended that Whitledge work no more than an eight hour shift and confirmed that she suffered from some chronic level of disability.

21.     On January 11, 2007, Whitledge provided her release to Joyce Pennaman of Defendant.  Pennaman told Whitledge that she could not return to work until a meeting occurred to decide whether Defendant would accommodate her.

22.     Rather than accommodate Whitledge, on January 12, 2007, Defendant required that Whiteldge undergo an additional functional capacity exam.  Her functional capacity exam never tested her for speed but did result in a similar limitation as that which her primary physician placed on her.

23.     On February 16, 2007, Whitledge was offered a position in Pre-Admission Testing that would accommodate her disability.  However, when Whitledge called the Defendant on February 20, 2007 to accept the new position, it was revoked.   Whitledge inquired about any other openings within the organization that she could fill and was told by Defendant that they all required 12 hour shifts.

24.     By letter, on the same day, Defendant confirmed that it would not allow Whitledge to fill the Pre-Admission Testing position.  Furthermore, it explicitly denied her any accommodation by merely offering her to return to the Endoscopy position without a guarantee

that her workday would not exceed eight to ten hours as both her physicians indicated was appropriate for her disability.

25. Furthermore, Defendant never offered Whitledge an accommodation to assist her with the disability-caused speed-related problems that resulted in her purported performance deficiencies.

26. Whitledge applied for other open available positions, but she did not receive them.

27. In April 2007, Defendant gave Whitledge her annual performance appraisal. Her performance was rated as "Very Effective".

### V. LEGAL ALLEGATIONS

#### COUNT I: DISABILITY DISCRIMINATION - FAILURE TO ACCOMMODATE

28. Paragraphs one (1) through twenty-seven (27) of Whitledge's Complaint are hereby incorporated.

29. Defendant failed to provide a reasonable accommodation for Whitledge's disability.

30. Defendant's actions were intentional, willful and in reckless disregard of Whitledge's rights as protected by the ADA and KRS 344.030 *et.seq.*

31. Plaintiff has suffered and continues to suffer harm as a result of Defendant's unlawful actions.

#### COUNT II: DISABILITY DISCRIMINATION

32. Paragraphs one (1) through thirty-one (31) of Whitledge's Complaint are hereby incorporated.

33. Defendant's violated Whitledge's rights by terminating her employment because of her disability.

34. Defendant's actions were intentional, willful and in reckless disregard of Whitledge's rights as protected by the ADA and KRS 344.040..

35. Whitledge has suffered and continues to suffer harm as a result of Defendant's unlawful actions.

## COUNT III:  RETALIATION

36. Paragraphs one (1) through thirty-five (35) of Whitledge's Complaint are hereby incorporated.

37. Whitledge engaged in protected activity when she complained to Defendant regarding harassment and sought an accommodation for her disability.

38. Subsequent to and as a direct result of Whitledge's protected activity, Defendant subjected her to less favorable terms and conditions of employment in violation of the ADA and Kentucky law.

39. Whitledge has suffered and continues to suffer harm as a result of Defendant's unlawful actions.

## REQUESTED RELIEF

WHEREFORE, Plaintiff, Molly Whitledge, by counsel, respectfully requests that this Court find for Plaintiff and order Defendant to:

1. Reinstate Plaintiff to the position, salary and seniority level she would have enjoyed but for Defendant's unlawful employment actions, or award her front pay in lieu thereof;

2. Pay to Plaintiff all of her lost wages and benefits;

3. Pay to Plaintiff compensatory damages;

4. Pay to Plaintiff punitive damages;

5. Pay to Plaintiff pre- and post-judgment interest;

6. Pay Plaintiff's costs and attorney fees incurred in litigating this action; and

7. Provide any further equitable relief this Court sees fit to grant.

Respectfully submitted,

 /s/Andrew Dutkanych III
Andrew Dutkanych III (KY Bar No. 91190)

BIESECKER & DUTKANYCH, LLC
317 SE Third Street
Evansville, IN 47713
Telephone:  (812) 424-1002
Facsimile:   (812) 424-1005
Email: ad@bdlegal.com
*Attorney for Plaintiff, Molly Whitledge*

## **DEMAND FOR JURY TRIAL**

Plaintiff, Molly Whitledge, by counsel, respectfully requests a jury trial for all issues deemed triable by jury.

Respectfully submitted,

 /s/ Andrew Dutkanych III
Andrew Dutkanych III (KY Bar No. 91190)

BIESECKER & DUTKANYCH, LLC
317 SE Third Street
Evansville, IN 47713
Telephone:  (812) 424-1002
Facsimile:   (812) 424-1005
Email: ad@bdlegal.com
*Attorney for Plaintiff, Molly Whitledge*